THE PEOPLE *ex rel.* PAUL E. HAMER, Plaintiff-Appellant, *v.* BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 109, COUNTY OF LAKE *et al.*, Defendants-Appellees.

(No. 70-56;

Second District—November 25, 1970.

Paul E. Hamer, of Northbrook, for plaintiff-appellant.

Ralph Miller, Allyn J. Franke, of Norman & Billick, of Chicago, for defendants-appellees.

Mr. PRESIDING JUSTICE DAVIS delivered the opinion of the court:

The plaintiff, Paul E. Hamer, filed this action seeking to compel the defendants, the Board of Education of School District No. 109, County of Lake, and the Secretary-Treasurer of the School District, to permit the plaintiff to examine and copy certain documents, and to challenge the conveyances of certain lands. The trial court dismissed the complaint, consisting of three counts, and the plaintiff has appealed.

In Count I, the plaintiff sought a writ of *mandamus* to compel the defendants to permit the inspection of certain receipts, which would indicate whether or not private citizens had paid for two brochures issued by the school district relative to a referendum, and sought to inspect a preliminary title report on land conveyed by the Deerfield Park District to the school district.

In Count II, he prayed for a declaratory judgment, in essence, that the conveyance from the park district to the school district be declared invalid under the particular circumstances.

In Count III, he sought equitable relief: that a decree be entered which would authorize him to examine the requested documents; that the conveyances be set aside, and for other relief. The trial court dismissed all three counts of the complaint and denied the plaintiff's oral motion to amend his complaint.

We will first consider the propriety of the dismissal of Counts II and III, which alleged that the plaintiff was investigating the sale of two parcels of real estate from the Deerfield Park District to the defendant school district; and that he was a resident and property owner of said school district. The allegations were somewhat vague relative to the exact nature of the events of which the plaintiff complained, and the precise extent of the relief which he sought. Basically, however, the plaintiff prayed for a determination that the conveyances were contrary to statutory limitations, or, if not, that the statute authorizing the conveyances is unconstitutional. The main thrust of the complaint was that the conveyances constituted a misuse of public property.

The trial court dismissed Counts II and III on the ground that the plaintiff had failed to allege special damage sufficient to give him standing to sue. At this time, the Supreme Court, in *Droste v. Kerner* (1966),

34 Ill.2d 495, 504, had held that a taxpayer or property owner has no standing in equity to enjoin an alleged misuse of property held in trust for the public unless he alleged and proved that he would suffer special damage, different in degree, and in kind, from that suffered by the public at large. Subsequent to the determination of the trial court in this case, the Supreme Court in *Paepcke v. Public Building Commission of Chicago* (1970), (Ill.2d), overruled that portion of its opinion in *Droste* dealing with the right and standing of the plaintiff so sue, and held, among other things, that a taxpayer has standing to challenge an alleged misuse of property held in trust for the public or an unauthorized diversion or reallocation of use, in that, as a taxpayer, the individual has an equitable interest in the public property.

■■ This equitable interest affords the basis for standing to sue, or a right to sue; and the taxpayer need not rely solely upon the efforts of public law officers for the protection of public rights. Thus, in *Paepcke*, the court adopted the dissenting opinion in *Droste*. Also see: *The Liberalized Law of Standing*, Davis, Vol. 27, No. 3, University of Chicago Law Review p. 450.

The plaintiff neither filed a written motion to amend, nor exhibited to the court the proposed pleading, but he did make an oral motion to amend when the court indicated it was going to dismiss the complaint for failure to allege special damage. The trial court denied this motion.

■■ Counts II and III alleged a number of statutory violations in a somewhat shotgun manner; and the exact and precise vices which they purported to assail are not entirely comprehensible. These counts did not meet the requirement of section 33 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 33), in that they did not "contain a plain and concise statement of the pleader's cause of action." While the trial court correctly denied the plaintiffs motion to amend under the pleadings, facts, and the law then before it, under the *Paepcke* decision, the plaintiff now has a right to sue, and we believe that he should be given an opportunity to amend his complaint to plainly and concisely state a cause of action, if such can be done, under the existing factual situation. Thus, the order of dismissal of Counts II and III is reversed and the cause is remanded with directions to the trial court to allow the plaintiff to amend said counts of his complaint.

■■ Section 4 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 4) provides that the Act shall be liberally construed to the end that controversies may be speedily and finally determined according to the substantive rights of the parties. Thus, the power to allow amendments should be freely exercised so that a litigant may fully present his alleged

cause of action. (*Scardina v. Colletti* (1965), 63 Ill.App.2d 481, 491.) Any abuse of discretion by a trial court in permitting or denying amendments to pleadings is subject to review. *Martin v. Kozjak* (1955), 5 Ill.App.2d 390, 393.

Also, we believe that the trial court was in error in dismissing Count I, in which the plaintiff sought a writ of *mandamus* to compel the defendants to permit him to examine a preliminary title report received by the defendants relative to the land conveyed, and to examine certain receipts relating to expenditures for brochures used in conjunction with a referendum. This count was dismissed on the ground that the "letter of opinion" was not a public record, and that the court, in the exercise of judicial discretion, did not believe that justice required the issuance of the writ of *mandamus*. In our opinion, the plaintiff was entitled to a further hearing on the merit of this count.

Both the plaintiff and the defendants direct our attention to the State Records Act (Ill. Rev. Stat. 1969, ch. 116, par. 43.4 *et seq.*) as defining public records for this purpose. Section 3 of the Local Records Act (Ill. Rev. Stat. 1969, ch. 116, par. 43.103), applicable to boards of any county, municipal corporation or political subdivision, contains substantially the same provisions as those set forth in the State Records Act, and defines "public record" as follows:

"Public record" means any book, paper, map, photograph, or other official documentary material, regardless of physical form or characteristics, made, produced, executed or received by any agency or officer pursuant to law or in connection with the transaction of public business and preserved or appropriate for preservation by such agency or officer, or any successor thereof, as evidence of the organization, function, policies, decisions, procedures, or other activities thereof, or because of the informational data contained therein. Library and museum material made or acquired and preserved solely for reference or exhibition purposes, extra copies of documents preserved only for convenience of reference, and stocks of publications and of processed documents are not included within the definition of public record."

As to the receipts, the defendants plead and claimed that they have at all times been willing to permit the plaintiff to examine and reproduce these records in the manner designated in the State Records Act, but they assert that the preliminary title report is not a "public record," subject to examination. They argue that a letter of opinion or preliminary report of title is not a record "required" to be kept, nor is it evidence of their procedures or operations. The statute, however, also refers to "other official documentary material * * * received * * * in connection

with the transaction of public business and  *  *  *  appropriate for preservation  *  *  *  as evidence of the  *  *  *  activities thereof, or because of the informational data contained therein."

The defendants also direct our attention to *Linder v. Eckard* (Iowa 1967), 152 N.W.2d 833, in which it was held that an appraisal report was not subject to public inspection. However, the court stated therein at page 835 that appraisals were preliminary matters of investigation, and, *until acted upon,* material of that kind did not assume the status of a public record or writing. Thus, *Linder* suggests that the Iowa courts would hold preliminary matters, such as appraisals or preliminary title reports, to be public records once some official action has been taken upon them.

■■ In the case at bar, it appears from the record before us that official action has been taken on the preliminary title report in question. Under the applicable statutes of our State, the rationale of *Linder,* and the general desirability of a policy which permits the public inspection of documents acted upon by public officials in a public capacity, we believe the trial court erred in dismissing Count I of the complaint.

For the reasons stated herein, the judgment of the trial court is reversed and the cause remanded for further proceedings.

Reversed and remanded with directions.

MORAN and SEIDENFELD, JJ., concur.